WARREN T. BURNS (Tx. Bar No. 24053119)
*Admitted to appear Pro Hac Vice*
wburns@burnscharest.com
BURNS CHAREST, LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Tele: (469) 904-4550 / Fax: (469) 444-5002

Co-Lead Counsel on behalf of Direct Purchaser Plaintiffs

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Audubon Imports, LLC, d/b/a Mercedes Benz of Baton Rouge, Autohaus Acquisition, Inc., Estate Motors, Inc., Powders Automobiles, Inc., f/k/a Powders Volkswagen, Inc., and Powders Volkswagen Audi, Inc., Team Imports, LLC d/b/a Team Audi and Team VW, Tom Schmidt, Wyoming Valley Motors, Inc. d/b/a Wyoming Valley BMW, and Bronsberg & Hughes Pontiac, Inc. d/b/a Porsche Wyoming Valley, individually and on behalf of all others similarly situated, | Case No. 3:17-md-02796-CRB<br><br>PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)<br><br>JURY TRIAL DEMANDED |
| Plaintiffs, | |
| vs. | |
| Bayerische Motoren Werke Aktiengesellschaft (BMW AG), BMW(US) Holding Corp., BMW of North America, LLC, Volkswagen AG, Volkswagen Group of America, Inc. d/b/a Volkswagen of America, Inc. and Audi of America, Inc., Audi Aktiengesellschaft (Audi AG), Audi of America, LLC, Dr. Ing. h.c. F. Porsche AG, Porsche Cars of North America, Inc., Daimler Aktiengesellschaft (Daimler AG), Daimler North America Corporation, Mercedes-Benz U.S. International, Inc., Mercedes-Benz Vans, LLC, and Mercedes-Benz USA, LLC, | |
| Defendants. | |

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1

2

3

**INTRODUCTION**

Plaintiffs bring this motion under Federal Rule of Civil Procedure 60(b) for relief from the Court's October 23, 2020 judgment, and seek leave to file a Third Amended Complaint.

4

5

6

7

8

9

10

11

12

In October 2020, the Court dismissed Plaintiffs' allegations in its Second Amended Complaint that Defendants conspired to restrict innovation and development in the auto market. But on July 8, 2021, the European Commission issued a press release announcing that it had concluded that Defendants had engaged in just the sort of anticompetitive conduct that Plaintiffs alleged in their complaint (and which the Court had dismissed), and fined Defendants nearly €2 billion.  On November 12, 2021, the Commission issued its full decision outlining all of these factual allegations in detail.  Because of this new, highly relevant evidence, and to avoid a miscarriage of justice, Plaintiffs ask the Court to set aside its October 23, 2020 judgment, and allow Plaintiffs to file a Third Amended Complaint.

13

**BACKGROUND**

14

15

16

17

18

19

20

21

22

23

On March 15, 2018, Plaintiffs filed their Consolidated Complaint alleging that Defendants—five German automakers and their American subsidiaries—violated § 1 of the Sherman Act, 15 U.S.C. § 1. Defendants moved to dismiss, and on June 17, 2019, this Court dismissed the complaint with leave to amend. Plaintiffs then filed their First Amended Complaint on August 15, 2019. Defendants again moved to dismiss, and on March 31, 2020, this Court granted their motion. In so doing, the Court rejected Plaintiffs' allegation that Defendants had entered into a market allocation agreement by restricting innovation. The Court further rejected Plaintiffs' allegation that Defendants had expressly agreed to restrict the development of electric vehicles. While likewise rejecting Plaintiffs' steel conspiracy allegations, the Court nevertheless granted Plaintiffs leave to amend to address the court's concerns.

24

25

26

27

On June 26, 2020, Plaintiffs filed their Second Amended Complaint. The Second Amended Complaint contained almost 60 pages of factual allegations to support Plaintiffs' claims. Despite those

28

1

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1   extensive factual allegations, on October 23, 2020 this Court dismissed all of Plaintiffs' claims without

2   leave to amend.

3        On October 26, 2020, Plaintiffs promptly appealed.  The parties fully briefed the appeal by

4   June 11, 2021.  However, one month later, on July 8, 2021, the European Commission announced

5   that it found that Defendants Daimler, BMW, and Volkswagen group (Volkswagen, Audi, and

6   Porsche) had engaged in exactly the sort of conspiracy that Plaintiffs alleged in their Second Amended

7   Complaint and that "[a]ll parties acknowledged their involvement in the cartel."[1]  The European

8   Commission found and Defendants agreed that they had:

9
   - "collude[d] on technical development in the area of nitrogen oxide cleaning" and AdBlue
10    injection;

11   - "reached an agreement on AdBlue tank sizes and ranges and a common understanding on the
      average estimated AdBlue consumption";
12
   - "held regular technical meetings" to discuss their agreement;
13
   - "exchanged commercially sensitive information" to implement their agreement;
14
   - "removed the uncertainty about their future market conduct"; and
15
   - "restricted competition on product characteristics relevant for the customers."
16

17   *Id.*

18        The Commission fined the companies €875,189,000.   Daimler avoided an additional

19   €727,000,000 fine by revealing the conspiracy to the Commission, and Volkswagen's €502,362,000

20   fine reflected a 45% reduction in exchange for cooperation.  *Id.*  Were it not for the reductions, the

21   German automobile manufacturers would have faced nearly €2 billion (approx. $2.3USD) in fines for

22   their anticompetitive conduct.

23

24

25   [1] Ex. A (European Commission Press Release IP/21/3581, Antitrust: Commission fines car
26   manufacturers €875 million for restricting competition in emission cleaning for new diesel passenger
     cars (July 8, 2021)).
27

2

28      PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
        Case No. 3:17-md-02796-CRB

1    Plaintiffs wrote a letter to the Ninth Circuit to alert them to this new evidence.  But without

2  the detailed decision of the European Commission, and an opportunity to draft a full motion or to

3  amend their complaint to connect this new evidence to the prior allegations, Plaintiffs were unable to

4  explain in a short letter format "how alleged violations of European law, arising from cars sold in

5  Europe, render their claims under American law and relating to cars sold in the United States

6  plausible." *In re German Auto. Mfr. Antitrust Litig.*, No. 20-17139, 2021 WL 4958987, at *2 (9th Cir.

7  2021).  Therefore, on October 26, 2021, the Ninth Circuit affirmed this Court's judgment.  *Id.*

8  Plaintiffs, however, have sought panel rehearing of that decision and en banc review, and thus the

9  appeal is still pending.

10   After the European Commission issued its limited press release and the Ninth Circuit issued

11  its opinion, the European Commission published its final decision on November 12, 2021.[2]  That 51-

12  page decision expands upon the allegations contained in the press release:

- "Since diesel engines had been promoted as **environment-friendly technology** for several years, risks for [Defendants'] public image existed in connection with $NO_x$-cleaning."[3]

- The Defendants "considered **environmental performance** in respect of [diesel]-emissions to be a factor **relevant for competition**" and thus "considered issues related to AdBlue refill strategies, in particular the possibility of customer refilling and frequency and convenience of such refills (with due respect for infrastructure development) **to be relevant for customers and, thus, for competition**."[4]

- Defendants "could each have introduced small AdBlue tanks independently of one another. Instead, **they strived to coordinate so as to avoid competition between them** on the most intelligent solution to achieve potentially conflicting objectives."[5]

---

[2] Ex. B (Commission Decision (EC), July 8, 2021 (AT.40178) (C 2021)) (published Nov. 12, 2021).

[3] *Id.* at ¶ 131 (emphasis added).

[4] *Id.* at ¶ 89-90 (emphasis added).

[5] *Id.* at ¶ 134 (emphasis added).

3

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

- To accomplish this anti-competitive goal, they "**coordinated** the sizes of their AdBlue tanks and the ranges between two refills."[6]

- Further, Defendants also "**exchanged information about characteristics and performance indicators** of different car models in respect of AdBlue tank sizes, refill ranges and assumed average AdBlue-consumption.  This exchange of information **increased transparency** with regard to planning and implementation of certain aspects of SCR-technology for new diesel passenger car models."[7]

- "That conduct **served to reduce uncertainty as to their future conduct on the market** in relation to certain aspects of the SCR-systems to be installed in new diesel passenger cars."[8]

- "[C]ost considerations cannot justify agreeing on particular tank sizes or ranges and exchanging information on assumed average AdBlue-consumption, since **this conduct was not necessary to reduce the costs**."[9]

- Evidence of the Defendants' agreements included "minutes of meetings, emails and other contacts at expert meetings in the multi-layer framework of the 'circles of 5'.  In this context, **the coordination was repeatedly mentioned at different hierarchical levels** and confirmed, which filtered down through a pyramid of expert circles."[10]

- Ultimately, the European Commission concluded that Defendants "entered into agreements and/or engaged in concerted practices which, by their nature, were liable to **restrict competition regarding product characteristics of their new diesel passenger cars** as concerns AdBlue tank sizes, refill ranges and $NO_x$-cleaning beyond regulatory requirements; and, thus, to **restrict technical development in the area of $NO_x$-cleaning** with SCR-systems for new diesel passenger cars in the EEA and to **limit customer choice**.[11]

---

[6] *Id.* at ¶ 108 (emphasis added); *see also id.* at ¶ 103-07, 122-24.

[7] *Id.* at ¶ 124 (emphasis added); *see also id.* at ¶ 121 (Defendants "had regular contact and exchanged **competitively sensitive information** on current and future strategies" regarding AdBlue technology (emphasis added)).

[8] *Id.* at ¶ 125 (emphasis added).

[9] *Id.* at ¶ 136 (emphasis added).

[10] *Id.* at ¶ 109 (emphasis added).

[11] *Id.* at ¶ 139 (emphasis added).

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

- As part of their settlement with the European Commission, Defendants "**acknowledge[d] in clear and unequivocal terms** . . . its object, the main facts, . . . [their] role and the duration of [their] participation."[12]

And now, in light of this new evidence confirming the very antitrust activity Plaintiffs originally pleaded, Plaintiffs seek an indicative ruling from this Court that it would grant Plaintiffs' motion for relief from the Court's October 23, 2020 judgment if the Ninth Circuit remands for that purpose, and that this Court would permit Plaintiffs to file a Third Amended Complaint to fully address this new evidence.

## ARGUMENT

### I.  Legal Standard

A court may relieve a party from a "final judgment, order, or proceeding" under Rule 60(b) for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b); *see also generally United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b) . . . applies only to motions attacking final, appealable orders[.]").

While a petitioner must seek relief under Rule 60(b)(1), (2), or (3) within one year of the date of the final judgment or order, Fed. R. Civ. P. 60(c), that limitation does not apply where a court sets aside a final judgment for "any other reason that justifies relief" under Rule 60(b)(6).  *See Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  "To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay."  *Id.* (citing *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988); *Ackerman v. United States*, 340

---

[12] *Id.* at ¶ 64 (emphasis added).

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1  U.S. 193, 197–200 (1950); *Klapprott v. United States*, 335 U.S. 601, 613–14 (1949)).  Such a situation

2  occurs when a party could not seek relief within one year of the final order, "which cannot fairly or

3  logically be classified as mere 'neglect' on his part." *Klapprott*, 335 U.S. at 613.  Subsection (6),

4  therefore, "provides courts with authority 'adequate to enable them to vacate judgments whenever

5  such action is appropriate to accomplish justice.'" *Liljeberg*, 486 U.S. at 863 (quoting *Klapprott*, 335 U.S.

6  at 614–15)).  Here, although the European Commission issued its very limited press release on July 8,

7  2021, it did not publish its actual decision until November 12, 2021—more than a year after the Court

8  rendered its judgment on October 23, 2020.  Without the particularized and detailed information from

9  the Commission's decision, Plaintiffs were unable to move for an indicative ruling from this Court as

10  to whether it would set aside its order dismissing its claims and grant it leave to file a Third Amended

11  Complaint.

12

13  **II.  The Court should allow Plaintiffs to file a Third Amended Complaint to prevent a miscarriage of justice where Defendants admitted to the very anticompetitive conduct Plaintiffs originally accused them of.**

14

15  This is the sort of "extraordinary circumstance" where setting aside the Court's prior order "is

16  appropriate to accomplish justice." *Klapprott*, 335 U.S. at 613–15 (setting aside default judgment in a

17  denaturalization proceeding because petitioner had been ill, incarcerated, and without counsel for the

18  four years following the judgment); *see also In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249, 250 (9th

19  Cir. 1989) (holding relief appropriate where new legislation undermined the soundness of the

20  judgment); *United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) (five year delay permissible where

21  litigant reasonably interpreted an injunction to authorize litigant's conduct and timely relief was sought

22  upon receipt of notice to the contrary); *Rivera v. Puerto Rico Tel. Co.*, 921 F.2d 393 (1st Cir. 1990)

23  (twenty-three day delay permitted because party not properly notified of pending motion); *J.D. Pharm.*

24  *Distrib., Inc. v. Save–On Drugs & Cosmetics Corp.*, 893 F.2d 1201, 1207 (11th Cir. 1990) (relief from

25  judgment granted because party never served with requests for admissions or motion for summary

26  judgment); *but see United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049–50 (9th Cir. 1993)

27

28

6

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1   (denying motion because movant could not show "circumstances beyond its control prevented timely
2   action to protect its interests").

3           Here, the European Commission's final decision and Defendants' own admissions show that
4   the Court improperly dismissed Plaintiffs' allegations.  The Court "concluded that the two alleged
5   agreements [regarding AdBlue tanks and soft-top convertibles] related 'to niche vehicle features' and
6   did not evince a conspiracy to reduce innovation across the board, and held that any admissions in
7   Defendants' proffers to European antitrust authorities were 'too general and too vague to plausibly
8   support [a] broad agreement to reduce innovation.'" Dkt. 465 at 2 (quoting dkt. 387 at 13).  Previously,
9   the Court also disagreed that Plaintiffs' allegations plausibly "build[] on the alleged AdBlue agreements
10  to plead a 'no arms race' conspiracy, whose object was ostensibly to ensure 'that Defendants would
11  not compete against each other on certain technological innovations to gain market share against each
12  other.'" Dkt. 387 at 3 (quoting DPP Original Compl. ¶ 109).  Now, Defendants have admitted to this
13  very conduct and have agreed that they engaged in it for no other reason than to restrict innovation
14  and competition.

15
16  **A. Defendants' agreements to restrict innovation of diesel technology did not relate to
    "niche features."**

17          The agreements regarding AdBlue tanks do not relate "to niche vehicle features."  Dkt. 465 at
18  2. Defendants agreed that "[s]ince diesel engines had been promoted as environment-friendly
19  technology for several years, risks for [their] public image existed in connection with NOx-cleaning."[13]
20  The Defendants "considered environmental performance in respect of [diesel]-emissions to be a
21  factor relevant for competition" and thus "considered issues related to AdBlue refill strategies, in
22  particular the possibility of customer refilling and frequency and convenience of such refills (with due
23  respect for infrastructure development) to be relevant for customers and, thus, for competition."[14]

24

---

25  [13] *Id.* at ¶ 131.

26  [14] *Id.* at ¶ 89-90.

27

7

28          PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
            Case No. 3:17-md-02796-CRB

**B. Defendants engaged in a no-arms-race conspiracy to restrict competition and limit customer choice.**

Defendants did engage in "a conspiracy to reduce innovation across the board," and engaged in "a no arms race conspiracy" to prevent "gain[ing] market share against each other." Dkt. 387 at 3; dkt. 465 at 2. Defendants "entered into agreements and/or engaged in concerted practices which, by their nature, were liable to restrict competition regarding product characteristics of their new diesel passenger cars as concerns AdBlue tank sizes, refill ranges and $NO_x$-cleaning beyond regulatory requirements; and, thus, to restrict technical development in the area of $NO_x$-cleaning with SCR-systems for new diesel passenger cars in the EEA[15] and to limit customer choice."[16]

**C. Defendants' admitted to concrete, specific agreements to restrict technological innovation.**

Defendants have now provided specific and concrete details to support their "broad agreement to reduce innovation," and Plaintiff's allegations are no longer "too general [or] too vague" in light of this new information. Dkt. 465 at 2. For instance, Defendants "coordinated the sizes of their AdBlue tanks and the ranges between two refills."[17] "On 25 June 2009, [Defendants] agreed that the ranges between two AdBlue refills should be approximately 10,000 km, which would correspond to an AdBlue tank size of 8–10 litres for most car manufacturers. Consequently, a common understanding existed that assumed average AdBlue consumption would be approximately 0.8–1 litre per 1,000 km."[18] Defendants' agreements included "minutes of meetings, emails and other contacts

---

[15] Although diesel cars are less popular in the U.S. than in Europe, Defendants' still do sell diesel cars in the U.S., and there is no indication that Americans care any less about environmental factors than their European counterparts. Further, Defendants' agreements to restrict innovation in the diesel market are not necessarily limited to cars sold in Europe. While the European Commission only has the authority to issue decisions related to anticompetitive conduct within its jurisdiction, it did not find that Defendants did not enter into the same agreements with respect to cars sold in U.S.

[16] *Id.* at ¶ 139.

[17] *Id.* at ¶ 108; *see also id.* at ¶ 103-07, 122-24.

[18] *Id.* at ¶ 105.

8

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1  at expert meetings in the multi-layer framework of the 'circles of 5'.  In this context, the coordination

2  was repeatedly mentioned at different hierarchical levels and confirmed, which filtered down through

3  a pyramid of expert circles."[19]

4

### D. Defendants' sole purpose in entering into these agreements was to reduce uncertainty as to their future conduct and restrain competition.

6  The only reason Defendants entered into these no-arms-race agreements was to restrict

7  innovation and competition in the diesel market: Defendants' "conduct served to reduce uncertainty

8  as to their future conduct on the market in relation to certain aspects of the SCR-systems to be installed

9  in new diesel passenger cars."[20]  "[C]ost considerations cannot justify agreeing on particular tank sizes

10  or ranges and exchanging information on assumed average AdBlue-consumption, since this conduct

11  was not necessary to reduce the costs."[21]

12  The Court originally gave no weight to the European Commission's investigation "because it

13  was unknown whether they would 'result in indictments or nothing at all.'"  Dkt. 465 at 2.  But now,

14  the European Commission has issued its decision, and Defendants' have "acknowledge[d] in clear and

15  unequivocal terms" that they restricted innovation and competition in the market.[22]  It would be a

16  miscarriage of justice to prevent Plaintiffs from having their fair day in court when Defendants have

17  admitted to the very anticompetitive conduct that Plaintiffs accused them of many years ago.

18  ### CONCLUSION

19  For the reasons stated above, Plaintiffs respectfully ask the Court to grant Plaintiffs' motion

20  for relief from the Court's October 23, 2020 judgment, and permit Plaintiffs to file a Third Amended

21  Complaint.

22

23  [19] *Id.* at ¶ 109.

24  [20] *Id.* at ¶ 125.

25  [21] *Id.* at ¶ 136.

26  [22] *Id.* at ¶ 64.

27

9

28  PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

Dated:  December 28, 2021

Respectfully Submitted,

/s/ Warren T. Burns
WARREN T. BURNS
(TX Bar No. 24053119)
*Admitted to appear Pro Hac Vice*
wburns@burnscharest.com
BURNS CHAREST, LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Tel: (469) 904-4550 / Fax: (469) 444-5002

JAMES R. MARTIN
JENNIFER D. HACKETT
ZELLE LLP
1775 Pennsylvania Avenue, Suite 375
Washington, D.C. 20006
(202) 899-4100 Telephone jmartin@zelle.com
jhackett@zelle.com

JONATHAN R. MACBRIDE
ZELLE LLP
401 Plymouth Road, Suite 120
Plymouth Meeting, PA 19462
(484) 532-5330 Telephone
jmacbride@zelle.com

CHRISTOPHER T. MICHELETTI
JUDITH A. ZAHID
QIANWEI FU
ZELLE LLP
44 Montgomery Street, Suite 3400
San Francisco, California 94104
(415) 693-0700 Telephone
cmicheletti@zelle.com
jzahid@zelle.com
qfu@zelle.com

JEFFREY M. SCAFARIA
SCAFARIA LAW
2000 Market Street, Suite 1440
Philadelphia, Pennsylvania 19103
(215) 800-1083 Telephone
jeff@scafarialaw.com

10

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

1

2

3

4

DENNIS M. GEORGE
ARANGIO GEORGE, LLP
2000 Market Street, Suite 1440
Philadelphia, Pennsylvania 19103
(215) 567-1999 Telephone
dgeorge@arangiogeorge.com

5

6

7

8

9

10

ERIC L. CHASE
RONALD J. CAMPIONE BRESSLER,
AMERY & ROSS, P.C.
325 Columbia Turnpike
Florham Park, New Jersey 07932
P.O. Box 1980
Morristown, New Jersey 07962
(973) 514-1200 Telephone
echase@bressler.com
rcampione@bressler.com

11

12

13

14

DONALD C. KLAWITER
KLAWITER PLLC
2101 L Street, NW, Suite 800
Washington, D.C. 20017
(202) 468-5222 Telephone
don@klawiterpllc.com

15

16

17

18

19

WILLIAM A. KERSHAW
IAN J. BARLOW
KERSHAW, COOK & TALLEY, P.C.
401 Watt Avenue
Sacramento, California 95864
(916) 779-7000 Telephone
bill@kctlegal.com
ian@kctlegal.com

20

21

22

23

THOMAS P. THRASH
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, Arkansas 72201
(501) 374-1058 Telephone
tomthrash@thrashlawfirmpa.com

24

25

26

27

ISAAC L. DIEL
SHARP LAW LLP
Financial Plaza
6900 College Boulevard, Suite 285 Overland
Park, Kansas 66211
(913) 661-9931 Telephone

28

11

PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB

idiel@midwest-law.com

CHARLES D. GABRIEL
CHALMERS & ADAMS, LLC
North Fulton Satellite Office
5755 North Point Parkway, Suite 96
Alpharetta, Georgia 30022
(678) 735-5903 Telephone
cdgabriel@cpblawgroup.com

LARRY D. LAHMAN
MITCHELL DE CLERCK
202 West Broadway Avenue
Enid, Oklahoma 73701
(580) 234-5144 Telephone
larry.lahman@sbcglobal.net

STEPHEN B. MURRAY, SR.
STEPHEN B. MURRAY, JR.
MURRAY LAW FIRM
650 Poydras Street, Suite 2150
New Orleans, Louisiana 70130
(504) 525-8100 Telephone smurray@murray-
lawfirm.com smurrayjr@murray-lawfirm.com

MICHELLE A. PARFITT
ASHCRAFT & GEREL, LLP
1825 K Street NW, Suite 700
Washington, D.C. 20006
(202) 783.6400 Telephone
mparfitt@ashcraftlaw.com

*Additional Counsel on behalf of Direct Purchaser
Plaintiffs*

12
PLAINTIFFS' MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)
Case No. 3:17-md-02796-CRB