LATHAM & WATKINS LLP
   Daniel M. Wall (Bar No. 102580)
   Belinda S Lee (Bar No. 199635)
   Alicia R. Jovais (Bar. No. 296172)
   Elizabeth H. Yandell (Bar No. 301725)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
   *Dan.Wall@lw.com*
   *Belinda.Lee@lw.com*
   *Alicia.Jovais@lw.com*
   *Elizabeth.Yandell@lw.com*

   Michael Lacovara (Bar No. 209279)
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864
   *Michael.Lacovara@lw.com*

*Attorneys for Defendants BMW AG, BMW of North America, LLC, and BMW (US) Holding Corp.*

[Additional parties and counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: GERMAN AUTOMOTIVE MANUFACTURERS ANTITRUST LITIGATION | Case No. 3:17-md-2796-CRB MDL No. 2796 |
| This document relates to ALL DIRECT PURCHASER ACTIONS | **DEFENDANTS' RESPONSE TO DIRECT PURCHASER PLAINTIFFS' MOTION FOR INDICATIVE RULING UNDER FED. R. CIV. P. 62.1 AND MOTION FOR RELIEF UNDER FED. R. CIV. P. 60(B)** |

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF ARGUMENT ............................................................................ 1

II.    RELEVANT BACKGROUND ......................................................................... 3

      A.     The Court's March 31, 2020 and October 23, 2020 Orders
Granting Defendants' Motions to Dismiss ............................................. 3

      B.     The European Commission's Investigation Into Diesel Emissions
Technologies for Use in Vehicles Sold in Europe ................................. 4

      C.     The Ninth Circuit Affirms the Dismissal of DPPs' Claims................... 6

III.   ARGUMENT ................................................................................................. 7

      A.     Legal Standards.................................................................................... 7

      B.     DPPs' Rule 60(b) Motion for Relief Is Untimely................................. 8

      C.     DPPs Do Not Have Grounds for Relief Under Rule 60(b)................... 10

IV.   CONCLUSION.............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ackermann v. United States*,
340 U.S. 193 (1950)...............................................................................................9

*Arnett Facial Reconstruction Courses, Inc. v. Patterson Dental Supply, Inc.*,
No. CV 11-06929 CBM, 2013 WL 12246259 (C.D. Cal. Apr. 8, 2013)................................10

*Corex Corp. v. United States*,
638 F.2d 119 (9th Cir. 1981), *abrogated on other grounds by Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir. 1989) ..............................................................11

*Fantasyland Video, Inc. v. Cnty. of San Diego*,
505 F.3d 996 (9th Cir. 2007) ...........................................................................9, 11

*Gant v. Vanderpool*,
529 F. App'x 852 (9th Cir. 2013) ..........................................................................8

*In re: German Auto. Mfrs. Antitrust Litig.*,
392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...............................................................5, 13

*In re: German Auto. Mfrs. Antitrust Litig.*,
497 F. Supp. 3d 745 (N.D. Cal. 2020), *aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021)................................................................4, 13, 14

*In re: German Auto. Mfrs. Antitrust Litig.*,
MDL No. 2796 CRB (JSC), 2020 WL 1542373 (N.D. Cal. Mar. 31, 2020),
*aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021)................................. *passim*

*In re German Auto. Mfrs. Antitrust Litig.*,
No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) ........................................6

*Hyde v. United States*,
26 F.3d 130 (9th Cir. 1994) ..........................................................................10, 12

*Jones v. Aero/Chem Corp.*,
921 F.2d 875 (9th Cir. 1990) ............................................................................2, 10

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*,
394 F.3d 1143 (9th Cir. 2004) .............................................................................7

*Klapprott v. United States*,
335 U.S. 601 (1949)............................................................................................9

*Leong v. Havens*,
No. 18-cv-05751-JST, 2019 WL 3290775 (N.D. Cal. July 22, 2019).....................................13

*Liljeberg v. Health Servs. Acquisition Corp.*,
   486 U.S. 847 (1988) .................................................................................................8, 9

*Lyon v. Agusta S.P.A.*,
   252 F.3d 1078 (9th Cir. 2001) ..........................................................................1, 8, 9

*Metoyer v. Chassman*,
   248 F. App'x 832 (9th Cir. 2007) .........................................................................10

*Midland Innovations, NV v. Wang*,
   815 F. App'x 200 (9th Cir. 2020) ...........................................................................7

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*,
   507 U.S. 380 (1993) ...............................................................................................9

*Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) ....................................................................................7

*St. Pierre v. Avila*,
   120 F. App'x 748 (9th Cir. 2005) ...........................................................................8

*Sundby v. Marquee Funding Grp., Inc.*,
   No. 19-cv-00390-GPC-AHG, 2021 WL 5396228 (S.D. Cal. Nov. 18, 2021)........11

*Tribe v. U.S. Bureau of Reclamation*,
   319 F. Supp. 3d 1168 (N.D. Cal. 2018) .................................................................11

*In re Under Armour Sec. Litig.*,
   No. RDB-17-0388, 2020 WL 363411 (D. Md. Jan. 22, 2020) ...............................12

*United States Bank, N.A. v. Boardman*,
   No. C 11-04788 CRB, 2012 WL 5914264 (N.D. Cal. Nov. 26, 2012)....................8

*Warwick v. Univ. of the Pac.*,
   No. C 08-3904 CW, 2012 WL 3114600 (N.D. Cal. July 31, 2012) .......................11

*Williams v. Woodford*,
   384 F.3d 567 (9th Cir. 2004) ..................................................................................7

**RULES**

Fed. R. App. P. 28(j) ...................................................................................................6

Fed. R. Civ. P.
   59 ............................................................................................................................11
   60 ..............................................................................................................................8
   60(b) ............................................................................................................... *passim*
   60(b)(1) ....................................................................................................................9
   60(b)(2) ...................................................................................................1, 8, 10, 11
   60(b)(3) ....................................................................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

60(b)(6) .................................................................................................................1, 2, 8, 9

60(c)(1) .........................................................................................................................1, 8

62.1 .......................................................................................................................... *passim*

62.1(a) ...........................................................................................................................1, 7

**OTHER AUTHORITIES**

Press Release, European Commission, Antitrust: Commission Sends Statement of Objections to
BMW, Daimler and VW for restricting competition on emission cleaning technology (Apr. 5,
2019), http://europa.eu/rapid/press-release_IP-19-2008_en.htm .............................................5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

# I.        SUMMARY OF ARGUMENT

Direct Purchaser Plaintiffs ("DPPs") simply refuse to accept this Court's ruling—which has now been affirmed by the Ninth Circuit—that DPPs "fail to plausibly allege any Sherman Act violation that can be traced to a cognizable injury suffered by [DPPs]." *In re: German Auto. Mfrs. Antitrust Litig.*, MDL No. 2796 CRB (JSC), 2020 WL 1542373, at *3 (N.D. Cal. Mar. 31, 2020) ("*German Auto. II*"), *aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021).  As a final wild-goose chase, DPPs move the Court seeking an indicative ruling that it would grant DPPs' motion to set aside the Court's October 23, 2020 order ("October 2020 Order"), which dismissed DPPs' claims with prejudice, and allow DPPs to file a Third Amended Complaint. DPPs argue that they are entitled to such extraordinary relief based on the European Commission's July 8, 2021 press release (the "Press Release") and November 12, 2021 public decision (the "Decision") in a case concerning technical cooperation among German automakers on the development of certain emissions technology for diesel passenger cars sold in Europe. Turning a blind eye to what the Court has said repeatedly about the inapplicability of the European Commission proceeding to this litigation, DPPs contend that the Press Release and Decision constitute "new evidence" that justifies overturning the October 2020 Order.  *See* Rule 62.1 Motion (dkt. 481) at 1, 3, 5; Rule 60(b) Motion (dkt. 482) at 3, 5.  DPPs' motions are untimely and meritless, and they should be denied.

*First*, DPPs' Rule 62.1 motion for an indicative ruling should be denied because DPPs' Rule 60(b) motion for relief is untimely.  *See* Fed. R. Civ. P. 62.1(a); Fed. R. Civ. P. 60(c)(1).  A motion for relief based on purportedly newly discovered evidence is properly brought under Rule 60(b)(2), and must be made "no more than a year after the entry of the judgement or order." Fed. R. Civ. P. 60(c)(1).  DPPs know this and, therefore, attempt to style their motion as one under Rule 60(b)(6) based on "extraordinary circumstances" rather than one under Rule 60(b)(2) based on newly discovered evidence.  Rule 60(b) Motion (dkt. 482) at 5-6.  But "[t]he long-standing rule in this circuit is that . . . a motion brought under clause (6) must be for some reason other than the five reasons preceding it under the rule," *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088-89 (9th Cir. 2001), and DPPs *repeatedly* claim that their motion is based on "new evidence"—*i.e.*, it

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

1    is brought under clause (2).  *See, e.g.*, Rule 60(b) Motion (dkt. 482) at 5 ("[I]n light of *this new*

2    *evidence* confirming the very antitrust activity [DPPs] originally pleaded, [DPPs] seek an

3    indicative ruling from this Court that . . . this Court would permit [DPPs] to file a Third

4    Amended Complaint to fully address *this new evidence*." (emphases added)); Rule 62.1 Motion

5    (dkt. 481) at 1 ("[DPPs] bring this motion . . . so that the Court may consider *new evidence* that

6    supports [DPPs'] allegations." (emphasis added)).  Because DPPs filed their motion for relief

7    based on supposedly "new evidence" on December 28, 2021—one year and 66 days after entry

8    of the Court's October 2020 Order—their motion is time-barred, and Rule 60(b)(6) cannot save

9    it as a matter of law.

10           *Second*, even if DPPs' motion were not time-barred, the Press Release and the Decision

11   are not "new evidence" as DPPs contend.  *See, e.g.*, Rule 60(b) Motion (dkt. 482) at 5; Rule 62.1

12   Motion (dkt. 481) at 1.  "Newly discovered evidence" is evidence that is "of such magnitude that

13   production of it earlier would have been likely to change the disposition of the case."  *Jones v.*

14   *Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).  To start with, nothing in the Press Release

15   or the Decision is "new" in substance; DPPs rehash the same arguments about the European

16   Commission proceeding that they have been making for years.  *Compare, e.g.*, DPPs' Second

17   Amended Complaint ("DPP 2AC") (dkt. 448) ¶ 138 (alleging that "the EC has preliminary [sic]

18   concluded that Defendants unlawfully 'coordinated their AdBlue dosing strategies' and 'AdBlue

19   tank size and refill ranges'"), *with* Rule 60(b) Motion (dkt. 482) at 4 (arguing that the Decision is

20   significant because it states that Defendants "**coordinated** the sizes of their AdBlue tanks and the

21   ranges between two refills").

22           More fundamentally, there is nothing in the Press Release or the Decision that alters this

23   Court's conclusion that DPPs "fail to plausibly allege any Sherman Act violation that can be

24   traced to a cognizable injury suffered by [DPPs]."  *German Auto. II*, 2020 WL 1542373, at *3.

25   In fact, the Press Release and Decision expressly negate DPPs' assertion that Defendants

26   engaged in a broad "no arms race" conspiracy to allocate market shares, and instead confirm that

27   the European Commission proceeding was limited to the development of selective catalytic

28   reduction ("SCR") technology for use in the European Economic Area.  Press Release (dkt. 481-

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

2) at 2.  Moreover, the Press Release and Decision do nothing to overcome DPPs' problem that pleading a violation of the Sherman Act "requires more than pointing to the findings of European authorities regarding European law."  *German Auto. II*, 2020 WL 1542373, at *4.  And even if the Press Release and Decision somehow bolstered DPPs' contention that Defendants engaged in a broad "no arms race" conspiracy to allocate market shares in the United States, DPPs still would not have viable Sherman Act claims.  "The rule of reason requires [DPPs] to plead a relevant market impacted by Defendants' anticompetitive conduct," *id.* (quotation marks omitted), and the Press Release and Decision do nothing to cure the deficiencies in DPPs' facially implausible market definition arguments.

DPPs have had three bites at the apple, plus an appeal.  Enough is enough.  The Court should deny DPPs' Rule 62.1 motion for an indicative ruling and DPPs' Rule 60(b) motion for relief.

## II.   **RELEVANT BACKGROUND**

### A.   **The Court's March 31, 2020 and October 23, 2020 Orders Granting Defendants' Motions to Dismiss**

In March 2020, after previously dismissing DPPs' initial consolidated complaint with broad leave to amend, the Court dismissed DPPs' First Amended Complaint, holding that DPPs "fail to plausibly allege any Sherman Act violation that can be traced to a cognizable injury suffered by [DPPs]."  *German Auto. II*, 2020 WL 1542373, at *3.  Although the Court found that DPPs had plausibly alleged the existence of agreements concerning AdBlue tank sizes and dosing rates, the Court held that DPPs "failed to plead facts showing that the AdBlue agreements were an <u>unreasonable</u> restraint on competition."  *Id.* at *5.  The Court first rejected DPPs' argument that the AdBlue agreements constituted per se illegal agreements to reduce product quality, explaining that "the AdBlue agreements may have had procompetitive effects," and therefore did not fit into one of the "narrowly defined categories of collusion that clearly have no redeeming virtues" that are viewed as per se illegal.  *Id.* at *6.  The Court then concluded DPPs had not adequately alleged that the AdBlue agreements violated the Sherman Act under the Rule of Reason because DPPs' "efforts to plead a relevant market are facially deficient."  *Id.* at *7.

DPPs' failure to plead a plausible relevant market also doomed DPPs' other theories of liability, each of which suffered from other pleading deficiencies as well. *Id.* at *8.

The Court rejected DPPs' "no arms race" conspiracy theory because an alleged agreement on niche vehicle features (such as AdBlue tank sizes and dosing rates) "does not plausibly support the existence of a conspiracy meant to divide the American market into static shares." *Id.* The Court also rejected DPPs' "electric vehicles" conspiracy theory because the parallel conduct challenged by DPPs had a "perfectly innocuous explanation"—*i.e.*, "Defendants did not invest in electric vehicles because they 'had already invested heavily in diesel engines.'" *Id.* at *11. Lastly, the Court rejected DPPs' allegations that "Defendants colluded to pay <u>higher</u> prices [for steel], because their goal was to pay the same price for steel as their competitors, even if that meant everyone paid more," holding that DPPs' theory "is not supported by DPPs' factual allegations." *Id.*

The Court granted DPPs leave to amend their complaint—but only to the extent that they could "allege facts sufficient to plead a relevant market or injury from the alleged steel-buying agreements." *Id.* at *13.

In October 2020, the Court dismissed DPPs' Second Amended Complaint, holding that they still had not plausibly alleged that Defendants' alleged steel-buying agreements resulted in higher steel prices, or that Defendants agreed to pass through increased steel costs to DPPs. *In re: German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d 745, 761 (N.D. Cal. 2020) ("*German Auto. III*"), *aff'd*, No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021). The Court further held that all four of DPPs' claims failed for the additional reason that, after three tries, DPPs still had not pled a plausible market definition as required for a Rule of Reason claim. *Id.* at 759.

**B.   <u>The European Commission's Investigation Into Diesel Emissions Technologies for Use in Vehicles Sold in Europe</u>**

In September 2018, the European Commission announced that its investigation of German automakers "concern[ed] solely" whether they had "colluded to limit the development and roll-out of certain emissions control systems"—namely, particulate filters used in gasoline engines and SCR systems used in diesel engines—for cars sold in Europe. Sept. 2018 EC Press

1   Release (dkt. 377-3) at 2.[1]  Noting that European competition law permits "technical cooperation

2   aimed at improving product quality," the European Commission explained that "[n]umerous

3   other technical topics" allegedly discussed by the German automakers did not warrant further

4   investigation, much less an enforcement action.  *Id.*

5       In April 2019, the European Commission announced that it had sent the German

6   automakers a statement of objections limited to the two emissions control systems identified

7   above.[2]  As DPPs admit, the scope of the statement of objections was "limited to passenger

8   vehicles sold in the European Economic Area," and to whether the conduct at issue violated

9   European competition law.  DPP 2AC (dkt. 448) ¶ 138 & n.67.

10      In July 2021, the European Commission issued its Press Release announcing that it had

11  reached a final decision in connection with a settlement with the German automakers.  Press

12  Release (dkt. 481-2) at 2.  The European Commission found that the German automakers

13  "breached EU antitrust rules by colluding on technical development in the area of nitrogen oxide

14  cleaning" for vehicles sold in the European Economic Area.  *Id.*  "[S]pecifically, Daimler,

15  BMW and Volkswagen group reached an agreement on AdBlue tank sizes and ranges and a

16  common understanding on the average estimated AdBlue-consumption."  *Id.*  The European

17  Commission did not pursue charges based on the use of particulate filters in gasoline engines as

18  it did not uncover sufficient evidence of an infringement of EU antitrust rules with respect to that

19  technology.  *Id.* at 3.  The European Commission noted that "this is the first cartel prohibition

20  decision based solely on a restriction of technical development and not on price fixing, market

21  sharing or customer allocation."  *Id.* at 2.  The European Commission further found "no

22  indications that the parties coordinated the use of illegal defeat devices to cheat regulatory

23

24

---

25  [1]     The Court has taken judicial notice of this press release, which is also referenced in
26  DPPs' Second Amended Complaint.  *See In re: German Auto. Mfrs. Antitrust Litig.*, 392 F.
    Supp. 3d 1059, 1063 n.2 (N.D. Cal. 2019) ("*German Auto. I*"); DPP 2AC (dkt. 448) ¶ 192.

27  [2]     Press Release, European Commission, Antitrust: Commission Sends Statement of
    Objections to BMW, Daimler and VW for restricting competition on emission cleaning
28  technology (Apr. 5, 2019), http://europa.eu/rapid/press-release_IP-19-2008_en.htm. This press
    release is referenced in DPPs' Second Amended Complaint.  DPP 2AC (dkt. 448) ¶ 138 & n.67.

DEFS.' RESPONSE TO DPPS' MOT. FOR
                                          INDICATIVE RULING AND MOT. FOR RELIEF
                                          Case No. 3:17-md-2796-CRB

testing." *Id.* at 3.  The European Commission released a redacted public version of its Decision

in English in November 2021.  Decision (dkt. 481-3).

On September 29, 2021, DPPs submitted the Press Release to the Ninth Circuit as

"supplemental authority" under Federal Rule of Appellate Procedure 28(j).  DPPs' Notice of

Supplemental Authority, *In re German Auto. Mfrs. Antitrust Litig.*, No. 20-17139 (9th Cir. Sept.

29, 2021), ECF No. 39.

### C.        The Ninth Circuit Affirms the Dismissal of DPPs' Claims

DPPs appealed this Court's October 2020 Order.  Notice of Appeal (dkt. 466).  On

October 26, 2021, the Ninth Circuit affirmed the Court's orders dismissing DPPs' "no arm race,"

electric vehicle, and steel claims.[3]  *In re German Auto. Mfrs. Antitrust Litig.*, No. 20-17139,

2021 WL 4958987, at *1 (9th Cir. Oct. 26, 2021) ("*German Auto. Appeal*").  Relevant to the

current motions, the Ninth Circuit agreed that the Court properly dismissed DPPs' claim that

Defendants engaged in a "no arms race" conspiracy to allocate market shares because the "few

specific examples of Defendants' alleged collusion were either devoid of factual development,

pertinent to technology used predominantly in passenger vehicles sold in Europe, or simply too

narrow to establish an overarching conspiracy to restrict innovation on all, or most, aspects of

vehicle development." *Id.* (quotation marks omitted).  The Ninth Circuit further held that the

Court properly dismissed DPPs' claim alleging that Defendants conspired to not develop electric

vehicles because "the complaint alleges a benign explanation for Defendants' conduct"—that

"Defendants had already invested heavily in diesel engines"—and none of DPPs' purported

"plus factors" saved their claim.  *Id.* at *2.  The Ninth Circuit went on to say that DPPs "offer no

explanation for how alleged violations of European law, arising from cars sold in Europe, render

their claims under American law and relating to cars sold in the United States plausible," noting

that "no well-pleaded facts suggest that Defendants' conduct in Europe affected American

commerce." *Id.*

---

[3]        DPPs did not challenge this Court's holding that DPPs had not adequately alleged that
any agreements to coordinate AdBlue tank sizes and dosing rates were unreasonable restraints on
competition.  Of course, that is precisely what the European Commission proceeding addressed.

1    On December 27, 2021, DPPs filed a Petition for Panel Rehearing and Rehearing En

2  Banc ("Petition").  DPPs' Pet. for Panel Reh'g & Reh'g En Banc, *In re German Auto. Mfrs.*

3  *Antitrust Litig.*, No. 20-17139 (9th Cir. Dec. 27, 2021), ECF No. 47.  The following day, DPPs

4  filed their Rule 62.1 and Rule 60(b) motions with this Court.  Rule 62.1 Motion (dkt. 481); Rule

5  60(b) Motion (dkt. 482).  To date, the Ninth Circuit has not ordered a response or otherwise ruled

6  on DPPs' Petition.

7  **III.    ARGUMENT**

8    **A.    Legal Standards**

9    **Rule 60(b)** allows a court to grant relief from a judgment "only upon a showing of

10  (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void

11  judgment; (5) a satisfied or discharged judgment; or (6) 'extraordinary circumstances' which

12  would justify relief."  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255,

13  1263 (9th Cir. 1993) (citation omitted).  A "district court lack[s] jurisdiction to entertain [a] Rule

14  60(b) motion" that is "filed after the notice of appeal ha[s] been filed."  *Katzir's Floor & Home*

15  *Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1148 (9th Cir. 2004).  "To seek Rule 60(b) relief

16  during the pendency of an appeal, the proper procedure is to ask the district court whether it

17  wishes to entertain the motion, or to grant it, and then move [the Ninth Circuit], if appropriate,

18  for remand of the case."  *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2004) (quotation

19  marks omitted).

20    **Rule 62.1** provides that, "[i]f a timely motion is made for relief that the court lacks

21  authority to grant because of an appeal that has been docketed and is pending, the court may:

22  (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the

23  motion if the court of appeals remands for that purpose or that the motion raises a substantial

24  issue."  Fed. R. Civ. P. 62.1(a).  Denial of a Rule 62.1 motion serves as a denial of the Rule 60(b)

25  motion on the merits.  *Midland Innovations, NV v. Wang*, 815 F. App'x 200, 201 (9th Cir. 2020).

26    DPPs' Rule 62.1 motion for an indicative ruling on their Rule 60(b) motion for relief

27  based on "newly discovered evidence" should be denied.  DPPs' Rule 60(b) motion is untimely,

28

1   and nothing in the Press Release or Decision justifies reopening the Court's October 2020 Order

2   dismissing DPPs' claims with prejudice.

3         **B.**    **DPPs' Rule 60(b) Motion for Relief Is Untimely**

4         DPPs contend that the Press Release and the Decision constitute "new evidence" that

5   justifies granting them relief from the Court's October 2020 Order. *See, e.g.*, Rule 62.1 Motion

6   (dkt. 481) at 5; Rule 60(b) Motion (dkt. 482) at 5.  A motion for relief based on "newly

7   discovered evidence" is governed by Rule 60(b)(2); such a motion must be brought "within a

8   reasonable time" and "no more than a year after the entry of the judgement or order."  Fed. R.

9   Civ. P. 60(c)(1).  DPPs filed their Rule 60(b) Motion on December 28, 2021—one year and 66

10   days after the entry of the October 2020 Order from which DPPs seek relief.  Rule 60(b) Motion

11   (dkt. 482).  DPPs' motion for relief on the basis of (what they characterize as) newly discovered

12   evidence is thus time-barred under Rule 60(c)(1) and should be denied on that basis alone.

13         DPPs try to avoid this one-year time bar by asserting that the Court should consider their

14   motion under Rule 60(b)(6), which allows the Court to set aside a final judgment for "any other

15   reason that justifies relief," and which is not subject to Rule 60(c)(1)'s one-year time limit.

16   DPPs are wrong.  The Ninth Circuit has repeatedly held that a litigant seeking relief based on

17   supposedly newly discovered evidence "cannot avoid the time bar" on Rule 60(b)(2) motions by

18   styling their motion as one under Rule 60(b)(6).  *Lyon*, 252 F.3d at 1088-89; *see, e.g.*, *Gant v.*

19   *Vanderpool*, 529 F. App'x 852, 853 (9th Cir. 2013) ("To the extent that [Appellant's] motion for

20   reconsideration was based on newly discovered evidence or fraud, the motion was untimely as it

21   was filed over two years after entry of judgment. . . . [Appellant] cannot avoid the time bar as to

22   these bases for reconsideration by invoking Fed. R. Civ. P. 60(b)(6)."); *St. Pierre v. Avila*, 120 F.

23   App'x 748 (9th Cir. 2005) ("[Appellant] cannot avoid the time bar by evoking Rule 60(b)(6)

24   because he alleges fraud and misconduct [under Rule 60(b)(3).]").  That is because Rule 60(b)(6)

25   "applies only when the reason for granting relief is not covered by any of the other reasons set

26   forth in Rule 60."  *United States Bank, N.A. v. Boardman*, No. C 11-04788 CRB, 2012 WL

27   5914264, at *2 (N.D. Cal. Nov. 26, 2012) (Breyer, J); *see, e.g.*, *Liljeberg v. Health Servs.*

28   *Acquisition Corp.*, 486 U.S. 847, 863 (1988) ("Rule 60(b)(6) . . . grants federal courts broad

1   authority to relieve a party from a final judgment . . . provided that the motion . . . is not

2   premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).”); *Lyon*,

3   252 F.3d at 1088-89 (same).

4   　　　　None of the cases DPPs rely on support their incorrect assertion that the Court can apply

5   Rule 60(b)(6) in any situation in which “a party could not seek relief within one year of the final

6   order, ‘which cannot fairly or logically be classified as mere neglect on his part.’” Rule 60(b)

7   Motion (dkt. 482) at 6 (quoting *Klapprott v. United States*, 335 U.S. 601, 613 (1949)).  Rather,

8   those cases hold that where a movant can show “an extraordinary situation which cannot fairly or

9   logically be classified as mere ‘neglect’ on his part,” a Rule 60(b) motion is not fairly classified

10   as a Rule 60(b)(1) motion for “excusable neglect,” and therefore construing the motion as one

11   brought under Rule 60(b)(6) does not circumvent the one-year time bar applicable to Rule

12   60(b)(1).  *Klapprott*, 335 U.S. at 613.  In *Klapprott*, the Supreme Court applied Rule 60(b)(6) to

13   set aside a default judgment in a denaturalization proceeding because the petitioner had been ill,

14   incarcerated, and without counsel for the four years following entry of the judgment, which

15   amounted to “extraordinary circumstances,” as opposed to “excusable neglect,” under Rule

16   60(b)(1).  *Id.*; *see also Ackermann v. United States*, 340 U.S. 193, 199 (1950) (discussing

17   *Klapprott*); *Liljeberg*, 486 U.S. at 863-64 & n.11 (discussing *Klapprott* and noting that

18   “clause (6) and clauses (1) through (5) are mutually exclusive”); *Pioneer Inv. Servs. Co. v.*

19   *Brunswick Assoc. Ltd. P’ship*, 507 U.S. 380, 393 (1993) (noting that Rule 60(b)(1) and Rule

20   60(b)(6) are “mutually exclusive”).  Those cases *do not* hold that the Court may apply

21   Rule 60(b)(6) to a motion for relief based on newly discovered evidence where the evidence was

22   discovered more than a year after judgment.  DPPs do not cite a single case where a court

23   applied Rule 60(b)(6) to an untimely motion for relief based on newly discovered evidence, and

24   Defendants are aware of none.

25   　　　　Finally, Rule 60(b)(6) “has been used sparingly as an equitable remedy to prevent

26   manifest injustice and is to be utilized only where extraordinary circumstances prevented a party

27   from taking timely action to prevent or correct an erroneous judgment.” *Fantasyland Video, Inc.*

28   *v. Cnty. of San Diego*, 505 F.3d 996, 1005 (9th Cir. 2007) (quotation marks omitted).  No such

1   "extraordinary circumstances" are present here.  DPPs were aware of the Press Release *months*

2   before their time to file a motion under Rule 60(b)(2) expired.  It was not until the Ninth Circuit

3   denied DPPs' appeal of the Court's October 2020 Order—after having considered the same Press

4   Release that DPPs now contend is a sufficient basis to set aside the October 2020 Order—that

5   DPPs chose to file their motion with this Court.  DPPs have no one but themselves to blame for

6   their delay.[4]  DPPs' Rule 60(b) motion is untimely, and should be denied on that ground alone.

7              **C.      DPPs Do Not Have Grounds for Relief Under Rule 60(b)**

8              Even if their Rule 60(b) Motion were not time-barred, DPPs are not entitled to relief

9   under Rule 60(b)(2).  To obtain relief under Rule 60(b)(2) on the basis of newly discovered

10  evidence, DPPs must "show the evidence (1) existed at the time the [Court] entered . . .

11  judgment, (2) could not have been discovered through due diligence, and (3) was 'of such

12  magnitude that production of it earlier would have been likely to change the disposition of the

13  case.'"  *Hyde v. United States*, 26 F.3d 130, 130 (9th Cir. 1994) (quoting *Jones*, 921 F.2d at 878).

14  DPPs do not even attempt to show that the Press Release and Decision are "newly discovered

15  evidence" within the meaning of Rule 60(b)(2)—because they are not.  And even if the Court

16  were to consider the Press Release and Decision at this late stage, there is nothing in those

17  documents that should change the Court's observation that "whether [DPPs] have met the

18  requirements for pleading a violation of the Sherman Act . . . requires more than pointing to the

19  findings of European authorities regarding European law," or the Court's conclusion that DPPs

20  "fail to plausibly allege any Sherman Act violation that can be traced to a cognizable injury

21  suffered by [DPPs]."  *German Auto. II*, 2020 WL 1542373, at *3-4.

22

23

24

---

25   [4]      DPPs argument that they were "unable" to seek timely relief from the Court on the basis
     of the Press Release because they did not yet have the "particularized and detailed information"
26   contained in the Decision published in November 2021 is unavailing.  Rule 60(b) Motion (dkt.
     482) at 6.  "Plaintiff is not reasonably diligent in discovering new evidence where Plaintiff
27   knows of the evidence but waits until it is in a more accurate form."  *See Arnett Facial
     Reconstruction Courses, Inc. v. Patterson Dental Supply, Inc.*, No. CV 11-06929 CBM, 2013
28   WL 12246259, at *4 (C.D. Cal. Apr. 8, 2013) (citing *Metoyer v. Chassman*, 248 F. App'x 832,
     835 (9th Cir. 2007)).

1          **1.      The Press Release and Report Are Not "Newly Discovered Evidence"**

2                  **Within the Meaning of Rule 60(b)(2)**

3          Neither the Press Release nor the Decision is "newly discovered evidence" within the

4  meaning of Rule 60(b)(2).  To start with, there is nothing "new" in the Press Release or the

5  Decision.  DPPs' Second Amended Complaint contained references to prior European

6  Commission press releases that contained virtually the same statements that appear in the Press

7  Release and Decision.  *Compare, e.g.*, DPP 2AC (dkt. 448) ¶ 138 ("[T]he EC has preliminarily

8  concluded that Defendants unlawfully 'coordinated their AdBlue dosing strategies' and 'AdBlue

9  tank size and refill ranges' . . ."), with Rule 60(b) Motion (dkt. 482) at 4 (arguing that the

10  European Commission's Press Release and Decision found that Defendants "coordinated the

11  sizes of their AdBlue tanks and the ranges between two refills").

12          Additionally, "[c]ases construing 'newly discovered evidence,' either under 60(b)(2) or

13  Rule 59, uniformly hold that evidence of events occurring after the trial is not newly discovered

14  evidence within the meaning of the rules."  *Corex Corp. v. United States*, 638 F.2d 119, 121 (9th

15  Cir. 1981), *abrogated on other grounds by Gregorian v. Izvestia*, 871 F.2d 1515, 1526 (9th Cir.

16  1989); *see, e.g., Fantasyland Video, Inc.*, 505 F.3d at 1005 (holding that "evidence that was not

17  in existence at the time of the judgment" is not "newly discovered evidence" under

18  Rule 60(b)(2)); *Tribe v. U.S. Bureau of Reclamation*, 319 F. Supp. 3d 1168, 1176 (N.D. Cal.

19  2018) (holding that "[n]ewly discovered" evidence that "points to new reports and information

20  that were developed after the date of the [relevant order] may not be the basis of relief pursuant

21  to Rule 60(b)(2)").  The Press Release and the Decision could not have been raised with the

22  Court prior to its October 2020 Order because those documents did not yet exist.  *See* Rule 60(b)

23  Motion (dkt. 482) at 9.  By definition, then, those documents cannot constitute "newly

24  discovered evidence" sufficient to support a Rule 60(b)(2) motion.  *See Warwick v. Univ. of the*

25  *Pac.*, No. C 08-3904 CW, 2012 WL 3114600, at *3-4 (N.D. Cal. July 31, 2012) (denying Rule

26  60(b)(2) motion where the "newly discovered evidence" was an article and two letters that did

27  not exist at the time of the court's order); *Sundby v. Marquee Funding Grp., Inc.*, No. 19-cv-

28  00390-GPC-AHG, 2021 WL 5396228, at *3 (S.D. Cal. Nov. 18, 2021) (denying Rule 60(b)(2)

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

1    motion where the "newly discovered evidence" was "unknown and unknowable to the [c]ourt or

2    Plaintiff" at the time of the court's order).  This fact alone distinguishes the DPPs' primary

3    authority, *In re Under Armour Sec. Litig.*, No. RDB-17-0388, 2020 WL 363411 (D. Md. Jan. 22,

4    2020), where the plaintiffs only discovered after the judgment evidence of government

5    investigations that predated the judgment, and where those government investigations involved

6    factual allegations materially different from those in the operative complaint.

7         **2.      Nothing in the Press Release or Decision Provides a Basis for**

8                   **Overturning the October 2020 Order**

9         For more than four years, DPPs have contended that Defendants conspired for decades to

10   unlawfully restrict innovation across every aspect of their vehicles.  The assertion in DPPs' Rule

11   60(b) Motion that the European Commission has "confirm[ed] the very antitrust activity" they

12   allege, (dkt. 482 at 5), is not true.  The Press Release and Decision instead confirm that the

13   European Commission proceeding was narrowly focused on the development of SCR technology

14   for diesel vehicles sold in Europe.  *See* Press Release (dkt. 482-2) at 2.  Thus, even if they had

15   been available prior to the October 2020 Order, the Press Release and Decision would have not

16   have "change[d] the disposition of the case."  *Hyde*, 26 F.3d at 130.  Indeed, the Ninth Circuit

17   affirmed the October 2020 Order after having the Press Release brought to its attention by DPPs.

18   There are numerous reasons why that was the correct outcome.

19        *First*, the Press Release expressly contradicts DPPs' claim that Defendants "engaged in a

20   no arms race conspiracy to prevent gaining market share against each other."  Rule 60(b) Motion

21   (dkt. 482) at 8 (internal quotation marks omitted).  The Press Release explains that the European

22   Commission's decision to impose fines was "based solely on a restriction of technical

23   development and ***not*** on price fixing, market sharing or customer allocation."  Press Release

24   (dkt. 482-2) at 2 (emphasis added); *see also* Decision (dkt. 482-3) ¶ 10 ("This procedure

25   exclusively concerns a coordination concerning technical aspects, and not concerning prices,

26   costs or quantities.").

27        *Second*, nothing in Press Release or the Decision alters this Court's commonsense

28   conclusion that standardizing a "niche vehicle feature" like AdBlue tank sizes and dosing rates

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

1   would not be "adequate to maintain each Defendants' market share." *German Auto. II*, 2020 WL

2   1542373, at *8.  That conclusion is unaffected by the European Commission's statement that

3   "environmental performance" is "relevant for competition," Rule 60(b) Motion (dkt. 482) at 7

4   (citing Decision ¶ 89-90).  Even if Defendants had agreed on AdBlue tank sizes and dosing rates,

5   *see* Rule 60(b) Motion (dkt. 482) at 8, that agreement would "not plausibly support the existence

6   of a conspiracy meant to divide the American market into static shares." *German Auto. II*, 2020

7   WL 1542373, at *8.  In short, despite claiming that "new evidence" supports relief from the

8   Court's judgment, DPPs cite no "newly discovered evidence"; rather, they are seeking to reargue

9   points that the Court has already considered and rejected.  *See Leong v. Havens*, No. 18-cv-

10  05751-JST, 2019 WL 3290775, at *2 (N.D. Cal. July 22, 2019) (denying Rule 62.1 motion

11  where the Court "has already considered and rejected many of [movant's] arguments, which he

12  has raised repeatedly in earlier motions").

13          *Third*, what the Court has already recognized remains accurate:  the European

14  Commission proceeding has no application to the U.S. market or U.S. antitrust law.  The

15  Decision was "limited to passenger vehicles sold in the European Economic Area," DPP 2AC

16  (dkt. 448) ¶ 138 n.67; Decision (dkt 482-3) ¶ 1, 5, and the European Commission made no

17  finding that AdBlue tank sizes or dosing rates for vehicles sold in the United States was ever

18  discussed, much less that an agreement on those topics existed or was ever implemented.

19  Moreover, the Decision confirms the correctness of this Court's observation that "violation of

20  European cartel law does not necessarily mean that [Defendants] violated the Sherman Act,"

21  because "European and American antitrust laws are not uniform." *German Auto. I*, 392 F. Supp.

22  3d at 1070.  Applying the European legal concept of an "infringement by object," the European

23  Commission fined Defendants for talking about AdBlue tank sizes and dosing rates, despite the

24  fact that "at no time did Daimler, VW and BMW ***actually introduce*** SCR-systems with AdBlue-

25  Tanks of uniform size and/or range."  Decision (dkt. 482-3) at ¶ 140 (emphasis added).  Of

26  course, under U.S. antitrust law, DPPs were required to plausibly allege not only that there was

27  an agreement on AdBlue tank sizes and dosing rates, but also that such an agreement had an

28  anticompetitive effect.  *See German Auto. III*, 497 F. Supp. 3d at 755.

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

1    *Finally*, the Press Release and Decision do nothing to alter the Court's conclusion that

2    DPPs' claims are governed by, and failed to plead, the required elements of a Rule of Reason

3    claim. *Id.* at 759.  As the Court previously explained, "any [European Commission] finding that

4    the alleged diesel emissions system agreements lacked procompetitive benefits would not affect

5    whether per se treatment applies," because whether per se treatment is appropriate turns on

6    whether the "kind of restraint" at issue "obviously lacks any 'procompetitive benefit,'" and the

7    kind of restraint here—"agreeing to use only certain technical solutions"—does not.  *Id.* at 755.

8    DPPs try to re-open this point by asserting the "only reason" Defendants discussed AdBlue tanks

9    sizes and dosing ranges was "to restrict innovation and competition in the diesel market."  Rule

10    60(b) Motion (dkt. 482) at 9.  But that is not what the European Commission found.  Instead, the

11    European Commission found that discussions of AdBlue tank sizes and dosing rates occurred in

12    the context of "joint efforts of Daimler, VW and BMW to push for construction of a

13    comprehensive and customer-friendly refill infrastructure by influencing the mineral oil

14    industry."  Decision (dkt. 482-3) at ¶ 78.  Moreover, the European Commission stated that

15    certain additional aspects of Defendants' cooperation on SCR technology "raise no competition

16    concerns, such as the standardisation of the AdBlue filler neck, the discussion of quality

17    standards for AdBlue or the joint development of an AdBlue dosing software platform."  Press

18    Release (dkt. 482-2) at 3.  And nothing in Press Release or Decision relates to the fatal flaws in

19    DPPs' alleged market definition, nor do DPPs' motions even attempt to explain how they would

20    cure that independent reason their claims failed.  *See German Auto. III*, 497 F. Supp. 3d at 756-

21    58, 761.  Thus, DPPs' "newly discovered evidence" provides no basis for disturbing the Court's

22    previous holding that the Rule of Reason, not the per se rule, applies, and that DPPs failed to

23    satisfy its requirements.  *Id.* at 755-56.

24    **IV.    CONCLUSION**

25          For the foregoing reasons, Defendants respectfully request that the Court deny DPPs'

26    Motion for Indicative Ruling Under Fed. R. Civ. P. 62.1 (dkt. 481) and Motion for Relief Under

27    Fed. R. Civ. P. 60(b) (dkt. 482).

28

Dated:  January 11, 2022

Respectfully Submitted,

LATHAM & WATKINS LLP

By:     _/s/ Daniel M. Wall_

     Daniel M. Wall (Bar No. 102580)
     Belinda S Lee (Bar No. 199635)
     Alicia R. Jovais (Bar. No. 296172)
     Elizabeth H. Yandell (Bar No. 301725)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
Email: _Dan.Wall@lw.com_
     _Belinda.Lee@lw.com_
     _Alicia.Jovais@lw.com_
     _Elizabeth.Yandell@lw.com_

     Michael Lacovara (Bar No. 209279)
1271 Avenue of the Americas
New York, NY 10020
Telephone: +1.212.906.1200
Facsimile: +1.212.751.4864
Email: _Michael.Lacovara@lw.com_

_Attorneys for Defendants BMW AG, BMW of North America, LLC, and BMW (US) Holding Corp._

1  QUINN EMANUEL URQUHART & SULLIVAN,
   LLP
2

3  By:   */s/ Shon Morgan*
          Shon Morgan (Bar No. 187736)
4         Adam Bryan Wolfson (Bar No. 262125)
          Kevin Y. Teruya (Bar No. 235916)
5  865 South Figueroa Street, 10th Floor
   Los Angeles, CA 90017-2543
6  Tel: 213-443-3000
   Fax: 213-443-3100
7  Email: shonmorgan@quinnemanuel.com
   adamwolfson@quinnemanuel.com
8  kevinteruya@quinnemanuel.com

9
          Richard I. Werder, Jr. (*pro hac vice*)
10         Josef Teboho Ansorge (*pro hac vice*)
   51 Madison Avenue, 22nd Floor
11 New York, NY 10010
   Tel: 212-849-7000
12 Fax: 212-849-7100
   Email: rickwerder@quinnemanuel.com
13 josefansorge@quinnemanuel.com

14
   SQUIRE PATTON BOGGS (US) LLP
15         Eric J. Knapp (Bar No. 214352)
           Troy Masami Yoshino (Bar No. 197850)
16 275 Battery Street, Suite 2600
   San Francisco, CA 94111
17 Tel: 415-954-0200
   Fax: 415-393-9887
18 Email: Eric.Knapp@squirepb.com
   troy.yoshino@squirepb.com
19

20 *Attorneys for Defendants Daimler AG and*
   *Mercedes-Benz USA, LLC*
21

22

23

24

25

26

27

28

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SULLIVAN AND CROMWELL LLP

By:     /s/ Sharon L. Nelles

Sharon L. Nelles (*pro hac vice*)
Steven L. Holley (*pro hac vice*)
Suhana S. Han (*pro hac vice*)
125 Broad Street
New York, NY 10004
Tel: 212-558-4000
Fax: 212-558-3588
Email: nelless@sullcrom.com
holleys@sullcrom.com
hans@sullcrom.com

Amanda F. Davidoff (*pro hac vice*)
Samantha F. Hynes *(pro hac vice)*
1700 New York Avenue, NW
Washington, D.C. 20006
Tel: 202-956-7500
Fax: 202-293-6330
Email: davidoffa@sullcrom.com
hyness@sullcrom.com

*Attorneys for Defendants Volkswagen Group of
America, Inc., Volkswagen AG, Audi of America,
Inc., Audi of America, LLC, Audi AG, Porsche Cars
North America, Inc., and Dr. Ing. h.c. F. Porsche
AG*

1

## <u>SIGNATURE ATTESTATION</u>

2       Pursuant to Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this

3  document has been obtained from each of the signatories hereto.

4

5                                      By:   */s/ Daniel M. Wall*
                                            Daniel M. Wall
6
                                            *Attorney for BMW AG, BMW of North*
7                                           *America, LLC, and BMW (US) Holding*
                                            *Corp.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' RESPONSE TO DPPS' MOT. FOR
INDICATIVE RULING AND MOT. FOR RELIEF
Case No. 3:17-md-2796-CRB